The search of Mr. Alvarez and his car, we contend, was illegal under the recent Supreme Court ruling of Arizona v. Gantt, in that when Mr. Alvarez was arrested for driving without a license, his vehicle was searched, and it's illogical that they would have found evidence of that crime in Arizona. We also contend that he did not consent to the search, given the totality of the circumstances, in that he was in the back of a patrol car, he had been handcuffed, there were numerous officers, and... eyewitnesses that this particular vehicle was involved in bank robberies, and that's why they were tailing it. There is evidence of that, Your Honor, and yes, his car was suspected of being involved in the bank robbery. Why isn't that alone enough to search it? Your Honor, he wasn't arrested for that under Gantt, and there was plenty of time for them to have gotten a search warrant if they were so sure that his car... evidence that is probable cause, a car has been involved in a bank robbery, that they have to go get a search warrant of a vehicle that stopped on the street. What's your best case? My best case, Your Honor, would be Mapp v. Ohio. They should have gotten a search warrant. They had plenty of time. I don't believe that there was exigent circumstances under Leon or any of the other cases that allow for exigent circumstances. They had been surveilling this car for several weeks. His parole officer allegedly was involved in the surveillance of the car. She never asked for a parole hold on him. It seems to me that the longer and longer they surveilled this car, and the longer and longer they had chances to get a search warrant and stop him, the more it attenuates the exigence of this search. They could have stopped him when he was at his house. They could have stopped him when they followed him to the home of the other people that are alleged to have been involved. They could have stopped him on the road to Madera in Madera County when they saw him. There were plenty of opportunities for them to have stopped the car, and the longer and longer they waited to do it, in my opinion and in my belief, that attenuates the exigency of the circumstances, and they had plenty of time. They had weeks to get a search warrant, and they still didn't do it. Counsel, I'd like to return to the question of consent because there was conflicting testimony. The trial court made some findings of fact, for example, as to whether guns had been drawn and what the nature of the initial conversation was. Why is the district court's finding or its conclusion as to consent buttressed by these underlying factual findings? Why is there clear error in the district court? I believe that there's clear error in the district court because of the conflicting testimony. That was just one factor that the court should have considered, but under the totality of the circumstances with all the other factors that were involved, he was clearly acquiescing to authority rather than actually giving a true voluntary consent. Didn't he start the encounter himself voluntarily? No, ma'am. They had followed him. They had seen his car driving up. They had followed him. He had legally parked. He had gotten out of the car. He was talking to some people in the yard. The officer came up, got out of their car, walked into the yard, approached him, and initiated the conversation. Well, the district court found that he had approached them willingly. Is that a clear error in your view? No, I don't, Your Honor. Like I said, it's just one factor. When police officers approach people, it could be for any reason, but there is a point where that contact stops being consensual, and I believe that when they asked him about searching his car, and he's in the backseat of a patrol car, it's ambiguous from the various testimony whether at the time he was questioned whether or not he was actually in handcuffs, but he was definitely in the back of the patrol car. There were numerous officers around. It's ambiguous as to whether they had their guns drawn. Some people say he did. Some people say didn't. I know the officers, too. I know there's differing testimony, and part of it I think relates to timing, but in connection with the voluntariness of the consent, did the district court pinpoint it at two? What should we look at to say, well, that really was clear error in light of the record? Is there something? I mean, in other words, even though each thing has to add up to the totality, it would seem that there must have to be clear error in some of the findings for us to kind of take them out of the equation, so I'm just curious about the number of officers present. I think that at some point it becomes rather unclear because there are people milling around. There's a lot of people that were there at the house. There were officers. I don't think that the officers actually knew where everybody was, but the neighbor across the street who had a clear view, almost a panorama view of it, testified that they drew their guns almost immediately. There were a lot of them there. He was concerned about the safety of his children, and he hustled everybody into the house. Except that, well, the district court relied on the testimony of two of the officers who said that their guns were not drawn, and I believe found that there were only two officers there at the time of the consent, which may or may not be voluntary. But if, as you say, the record is unclear or ambiguous, how can we find clear error? Well, maybe I misspoke. It's not ambiguous. It's more of there's conflicting testimony between the two officers who testified versus the neighbor across the street. Well, why isn't the district court entitled to believe one set of witnesses over another? I believe that they are, but I believe that it's just one factor, and under the totality of the circumstances, it would be difficult to parse this out as to this is the place where the clear error concerned. I think that under the totality of the circumstances, clear error did occur, but to be able to say it happened at a particular point, given the nature of this case and the nature of the encounter, I think it would be very difficult to draw a fine line and say this is exactly the point where it happened. But I do contend that under the totality of the circumstances, it did happen. Does the district court have to sort out these conflicts and then mix a finding of fact, and then we usually say we're not going to overturn that finding of fact unless someone can demonstrate it's clearly erroneous? You're arguing that we ought to leave it in a muddle before the district judges make those findings and then find clear error. But I suggest to you that maybe that's what the district court was for, is to find out what he or she believed the facts were, and then it would be your responsibility to show that those findings were clearly erroneous. How would you do that in this case? Well, I believe that if I had to find a place where there was clear error of the consent, it would most definitely be when Mr. Alvarez was in the backseat of the car, because at that point he is clearly in custody. They're not going to let him out of that car. They're standing there in front of it. So if there has to be a point where clear error occurs in the consent, it's going to be when they had him in the backseat of that police car and asked him if they could search that car. He's in custody. There's officers there. Whether their guns are drawn or not, they're clearly going to be available to them. I think if we have to pick a point, it's when he's in the backseat of the car. You'd want a per se rule in every case. If a person's inside a police car, they cannot give voluntary consent. Is that what you're arguing for? I wouldn't argue for a per se rule, Your Honor, but I would say that that would be probably one of the weightiest factors, if you had to weigh factors, is whether or not the person is under custody, because he's not free to leave. And if he's not free to leave, he's not free to get in his car and say, no, you can't search it. Counsel, you're almost out of time. If you want to save a little bit for rebuttal. I would appreciate that. Thank you, Your Honor. We'll hear from the government. May it please the Court, Counsel. My name is Deuce Rice. I'm an assistant United States attorney in the Eastern District, California. I was the trial attorney in this case, as well as on the brief here. With respect to what was brought up about getting a search warrant for the car, what happened here is that there was an ongoing investigation, and the idea was not just to get Mr. Alvarez. It was to get the whole bunch. Officer Powell, because he had the information about the description of the white Cadillac and the white Cadillac being involved in bank robberies, inserted himself, basically, into the investigation when he decided on his own with Officer LaFontaine to contact Mr. Alvarez. Basically, to be blunt, he screwed up our investigation as far as getting the whole bunch. But not that not being, notwithstanding that, when he did insert himself in there, he had what Judge Wallace was pointing out. There was the collective knowledge there was probable cause already to search that white Cadillac. And so it fell squarely within the automobile exception. When the officer, Officer Powell, contacted the group, there were only two officers there. There was Officer LaFontaine and himself. And the other people might have changed. Sotomayor, does it matter for the automobile exception what the nature of the arrest was? Yes. You have to have – in order to search a vehicle under the automobile exception, you have to have probable cause to believe that the vehicle contains evidence of a crime. In this case, it would be bank robberies. Now, when Officer Powell was contacting him, though, he was trying to identify initially who was the driver. He didn't know that Mr. Alvarez was the driver of this white Cadillac when he first approached this group of ten people. He walked up, and I think the record's very clear that Officer Powell asked, who's the driver of this – of the car? And Mr. Alvarez then approached him and said, I'm the driver. And Mr. Alvarez is no inexperienced person with the criminal justice system. He had just gotten out on parole, you know, just a month prior, on July the 4th, 2002, from Pelican Bay. Long-time Nuestra Familia member, very familiar with law enforcement, many contacts, prior robbery conviction, not intimidated by being in contact with law enforcement. He contacts the officer. He tells him that he's the driver of the white Cadillac. Once he does that, the officer asks him, do you have a driver's license? He says no. And then he asks him, are you on probation or parole? And he says, I'm on parole. At that point, he's clearly in violation of parole because he's driving without a license at that point, and the officer says no. But that doesn't translate into search of the car under Gant. No. It doesn't translate at all. No. And after Gant, you know, bearing in mind that this – the search happened in 2002, Gant's decided in 2009, seven years later. Well, but it establishes a rule that we have to apply. Correct. As to whether it was properly incident to arrest. And I'm not saying it's properly incident to arrest anymore. Okay. I didn't argue that one. So you're no longer making that argument? No, and I don't believe I did in my brief. I believe I acknowledged in my brief that after Arizona v. Gant, you can't sustain the search as being a – the search, and I want to be clear, the search of the car cannot be sustained as being a search incident to arrest after Gant. However, the search of Mr. Alvarez's person under Virginia v. Moore is still – was still proper after Arizona v. Gant. So I want to make sure that that's clear. No, I understand your position. Okay. I just lost my train of thought. I'm sorry. The – I'm sorry, Your Honor. I just lost my train of thought. What was the court's inquiry? Well, you were talking about whether the car could be searched, and I asked you about Gant, and you responded that you're no longer making an argument that the search of the car could be justified as incident to arrest. Correct. But basically, there were many basis here that are proper to find the search lawful. One was consent, which the court has already been addressing with counsel. The other would be the automobile exception, as Judge Wallace brought up. There's also the fact that Mr. Alvarez was on parole. He was subject to a search under Knight's, and it was a proper – there was reasonable suspicion to believe that he was involved in these bank robberies, and so it was a proper parole search. Also, because he was being arrested for driving without a license, under the Madera Police Department policy, and this is in the transcript, in the record, the car was going to be towed and impounded anyway. And so as a practical matter, the officer was going to do an inventory search, and this And so there were at least four bases besides search incident to arrest on the car, under which this is proper. The district court found three bases, search incident to arrest, which is no longer the case, will no longer work as far as the search of the car under Gantt. However, the consent and the parole search bases, which the district court also upheld the search on the car under, are still very proper. The problem I have with the parole search, it seems to be that there's facts weren't known at the time, so it's kind of like a backward justification. They really were known at the time collectively, because there was an ongoing investigation. Nobody really invited Officer Powell into this investigation. He kind of invited himself into it. But there was already an ongoing investigation in which his very own parole officer, Parole Agent Newman, was involved. And he had already witnessed him in the company of other gang members, also caravanning with a stolen car up to Madera, appeared to be casing banks in the Madera area. And so the idea was in this investigation was not just to get Mr. Alvarez off the street, because there were multiple people involved in these two bank robberies in which shots were fired at witnesses. And that was the real danger, was to get all of them. Officer Powell, by putting himself into this investigation, really screwed us up as far as what we were trying to do in this case. But once he did do that, once Officer Powell did put himself into the investigation, he was aware that there was a bank robbery investigation going. That collective knowledge about the bank robberies investigation does show reasonable suspicion which would be useful. And the parole agent actually testified at the suppression hearing. And I called him to testify for the very purpose of explaining what was going on with the parole conditions, what he would have authorized and things like that had he been present at the moment that Officer Powell contacted him. Would you like to talk to us about the consent issue? What is the position of the government in relationship to the test that we should apply to the finding by the district court that he voluntarily consented to have the vehicle searched? Well, I think the court has to look at the totality of the circumstances. It has to look at who the individual that is being dealt with. How comfortable are they with law enforcement? What was the – was there – he wasn't – Mr. Albresant wasn't thrown on the gun – on the ground with a gun behind – to his head or anything like that. It was a consensual encounter. I perhaps wasn't clear of my question. I was talking about standard of review. It's clear as far as the district court.  I'm not sure that a standard of review waiver would be a fact that the district court found. And it would have to be demonstrated it was clearly erroneous. There seems to be a lot of evidence here, and I understand that things change at a scene such as this. But we're talking about specifically one time during this process in which he was asked to consent. What does the evidence show was the situation or what did the district court find was the situation at the time he provided the consent? Well, based on my memory, and I think I specifically cited in my brief the precise findings of the district court, but it was that there were only two officers there. Guns were not drawn. The initial contact between Mr. Alvarez and Officer Powell was consensual, where Officer Powell walked up and asked, who's the driver of this car? And then he had asked him basically, do you have a driver's license, and about whether he was on probation or parole. At that time, he was placed into custody. I believe Officer Powell testified that he had Mr. Alvarez turn around, handcuffed him, and sat him in the car, and then asked him whether or not there were drugs or guns in the car. And Mr. Alvarez says, I don't think so. And then Mr. Alvarez was asked by Officer Powell, may I search the car? And Mr. Alvarez said, go ahead. Now, I think it's based on those facts, and particularly given who Mr. Alvarez is, and his experience with law enforcement, that the district court's finding that there was voluntary consent here was proper, and certainly not clearly erroneous. Thank you, Counselor. Your time has expired. Thank you. Ms. Page, you may have some rebuttal. I just want to make two real quick notes. One, Officer Powell had to know the conditions, not just that he was on parole, but the conditions prior to searching him, and that's this Court's ruling in United States v. Crawford. Secondly, as Appelli noted, Officer Powell interjected himself into an investigation. By Appelli's own position, he messed it up. But under United States v. Medina, they have to accept everything Officer Powell did. Whether Officer Powell acted legally or not, they have to accept what he did, including everything that he did wrong. Thank you, Counsel. Thank you. I appreciate the arguments of both parties, and the case just argued is submitted.
judges: Wallace, Graber, McKeown